| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | FILED SUPERIOR COURT DIVISION |
| COUNTY OF FORSYTH | 06 CVS 8518 |

06 DEC 27 PM 2:57

FORSYTH COUNTY, C.S.C.

BY_____

RA BRANDS, LLC

    Plaintiff,

v.

USL PRODUCTS, INC., d/b/a
USL OUTDOOR PRODUCTS, INC.
A.H. FRIEDEBACH, and
RONALD L. RANDALL,

    Defendants.

**AMENDED COMPLAINT**

COMES NOW the plaintiff, RA Brands, LLC ("RA"), by and through counsel, and hereby files this Amended Complaint, and alleges the following against the defendants:

## I. PARTIES

1. RA Brands, LLC is a North Carolina limited liability company. Remington Arms Company, Inc. is the sole member of RA. Remington Arms Company, Inc. is a Delaware corporation with its principal place of business in North Carolina.

2. Defendant USL Products, Inc. d/b/a USL Outdoor Products, Inc. ("USL") is a Minnesota corporation with its principal place of business in Plymouth, Minnesota

3. Defendant A.H. Friedebach ("Friedebach") is, upon information and belief, a resident of Minnesota. At all relevant times, defendant Friedebach was the Chief Operating Officer of USL and was acting both in his individual capacity and in his capacity as Chief Operating Officer.
1

4. Upon information and belief, defendant Ronald L. Randall ("Randall") is a resident of Minnesota and at all relevant times was the sole shareholder of USL.

## II. JURISDICTION

5. USL entered into a Trademark License Agreement with RA on or about December 26, 2002 ("License Agreement") in which the parties agreed that the Agreement would be deemed executed and performed in the state of North Carolina, that any and all lawsuits or actions arising out of or relating to the Agreement must be brought exclusively in the State of North Carolina, and that USL expressly consented and submitted to the jurisdiction of North Carolina courts. As such, this Court has personal jurisdiction over USL.

6. Upon information and belief, at all relevant times defendant Friedebach was USL's Chief Operating Officers. Upon information and belief, Friedebach has communicated with individuals in North Carolina on numerous occasions and traveled to North Carolina on numerous occasions. Moreover, under the terms of the Agreement, defendant Friedebach executed the Agreement in North Carolina. As such, defendant Friedebach has had sufficient minimum contacts with the State of North Carolina such that this Court may exercise personal jurisdiction over him.

7. Upon information and belief, defendant Randall has had numerous contacts with North Carolina, including but not limited to communications with individuals in North Carolina, transacting business in North Carolina, and traveling to North Carolina, such that he could be reasonably expected to be haled into a North Carolina Court. Because of his minimum contacts with the state of North Carolina, this Court may exercise personal jurisdiction over Randall. Further, to the extent that USL has engaged in communications and acts in North Carolina as set

forth above, USL could only do so through its agents, including Messrs. Friedebach and Randall. Those acts provide a further basis for exercising jurisdiction over those defendants

## III. FACTUAL BACKGROUND

8. RA reasserts the allegations contains in paragraphs 1 through 7 by reference as if fully set forth herein.

9. Under the License Agreement, USL obtained the right to use RA's trademark, "Remington," in connection with the manufacture, promotion and sale of its tree stands. Prior to entering into the License Agreement, USL, through Friedebach, had negotiated with RA over the terms of the License Agreement.

10. Under the License Agreement, USL pledged its tree stands would meet or exceed the American Society for Testing and Materials ("ASTM") standards

11. Additionally, under the License Agreement, USL was required to protect, defend, indemnify, and save harmless RA from any claims of personal injury that arose from the use of a USL tree stand.

12. USL was also required to maintain liability insurance for any personal injury involving an alleged defect in its tree stands, with RA as an additional insured, up through and including March 2008 under the License Agreement. Before terminating the liability insurance, USL was required to notify RA of its intent to cancel the policy at least thirty (30) days prior to termination.

13. At the time the License Agreement was negotiated and entered into, USL, Friedebach and Randall knew that RA would rely upon its promise to maintain liability insurance as a condition for entering into the License Agreement. RA reasonably relied upon this promise when entering into the License Agreement.

3

14. However, at the time that said pledge was made, the defendants had no intention of abiding by the promise to maintain liability insurance. At the time USL was negotiating the License Agreement with RA, it was secretly in discussions with a related entity, Clam Corporation, in which USL was going to transfer its assets to Clam Corporation and thereafter cease its operations. Following the transfer, the defendants intended to cease payment on the liability insurance that it had promised to maintain for RA's benefit.

15. On or about February 10, 2003, USL entered into an asset purchase agreement ("APA") with Clam Corporation in which USL sold its assets to Clam Corporation. Thereafter, USL, Friedebach, and/or Randall terminated the liability insurance that was required to be maintained under the License Agreement for RA's benefit, but failed to inform RA of this cancellation. In fact, upon information and belief, the defendants requested USL's insurance agent to refrain from notifying anyone of the cancellation.

16. Upon information and belief, USL sold its assets to Clam Corporation for an amount in excess of $1 million and, upon receiving the proceeds, transferred said proceeds ("APA Proceeds") to defendant Randall, its sole shareholder. In doing so, Randall and USL knew that USL was left with insufficient funds to pay its debts and to maintain its liability insurance pursuant to the terms of the Licnese Agreement.

17. By terminating the insurance and transferring the APA Proceeds to Randall, both USL and Randall knew that USL would not have the necessary assets and/or insurance to satisfy any debts that came due as a result of a personal injury action arising out of the use of its tree stands.

18. Moreover, by terminating the insurance and transferring the APA Proceeds to Randall, USL and Randall knew that USL would not have the assets available to protect, defend,

4

WCSR 3507741v1

Case 1:06-cv-01109-WO-PTS    Document 4    Filed 12/29/06    Page 4 of 14

indemnify or save harmless RA in the event RA was sued for personal injuries arising from USL's tree stands.

19. In May 2003, a dispute arose between RA and USL over royalties which USL owed RA pursuant to the License Agreement. The parties entered into negotiations in an effort to resolve the dispute. Defendant Friedebach negotiated on USL's behalf.

20. The parties ultimately reached an agreement over the dispute ("Settlement Agreement"). Under the Settlement Agreement, the parties agreed to continue the License Agreement with respect to all obligations USL owed RA for product liability claims which might arise as a result of a consumer's use of a USL tree stand, including but not limited to the obligation to maintain liability insurance and to protect, defend, indemnify, and save harmless RA from any product liability claim. Upon information and belief, at the time USL entered into the Settlement Agreement, USL (including its officers and directors) had no intention of maintaining liability insurance or of protecting, defending, indemnifying or saving RA harmless from any future product liability claim, but instead made this false promise with the hope of convincing RA to compromise on its claim of royalties, which it did. USL and its officers and directors intended to deceive RA with these statements and intended for RA to rely upon these false promise in deciding to enter into the Settlement Agreement and thereby compromise its claim of royalties. RA did reasonably rely upon this false promise to its detriment.

21. Unknown to RA at the time it entered into the Settlement Agreement, USL, through Friedebach, had already cancelled the liability insurance it was required to maintain. Subsequent to entering into the Settlement Agreement, RA discovered that USL had actually cancelled the liability insurance in April 2003.

22. It has been alleged that on or about September 25, 2005, Duane Reott ("Reott") used one of USL's tree stands. Reott has alleged that the stand unexpectedly collapsed while he standing on it, causing him to fall to the ground and suffer extensive personal injuries, including but not limited to a fractured vertebrae.

23. Reott and his wife have brought suit against RA, USL and others ("Reott Lawsuit") alleging that the tree stand was not properly manufactured.

24. Under the terms of the agreements, USL was required to "protect, defend, indemnify and save harmless" RA from any and all expenses or damages which arise out of any claim for personal injury resulting from the use of one of its tree stands. RA has tendered the defense of the Reotts' Lawsuit to USL. USL has refused to defend RA.

25. Upon information and belief, USL transferred the APA Proceeds to Randall for insufficient consideration and/or less than reasonably equivalent value.

26. As a result of said transfer, USL was thereafter insolvent and no longer had assets to pay its obligations of liability insurance as required under the Agreement, to satisfy any claim of indemnity made by RA, or to accept the tender of any defense offered by RA.

## IV. FIRST CLAIM: BREACH OF CONTRACT

27. RA realleges the allegations set forth in paragraphs 1 through 26 as by reference as if fully set forth herein.

28. The agreements required USL to manufacture its tree stands pursuant to ASTM standards. If the allegations contained in the Reott Lawsuit are found to be true, then USL breached the agreements by failing to properly manufacture its tree stands according to ASTM standards. RA has been damaged as a result of said breach to the extent RA is required to pay damages to the Reotts.

6

29. Under the agreements, USL was obligated to maintain liability insurance to cover any injury arising from the use of its tree stand through March 2008. Under the agreements, USL was also required to defend, indemnify and hold RA harmless against any lawsuit alleging personal injury as a result of the use of a USL tree stand.

30. USL breached the agreements by failing to maintain liability insurance, and by failing to protect, defend indemnify, and save harmless RA in the Reotts' Lawsuit.

31. As a direct and proximate result of the breach of the agreements, RA has suffered damages in excess of $10,000.00. RA is entitled to be compensated for its damages, including attorneys' fees, as permitted under the agreements.

## V. SECOND CLAIM
## FRAUD IN THE INDUCEMENT AND/ OR NEGLIGENT MISREPRESENTATION

32. RA realleges by reference all allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33 During the negotiations and again at the time of entering into the agreements, USL and Friedebach represented that liability insurance would be maintained for RA's benefit through March 2008. At the time these representations were made, USL and Friedebach knew and/or should have known said statements were false. USL and Friedebach intended RA to rely upon these representations. These statements were made with the intent to deceive RA. Moreover, at the time of entering into the agreements, USL (including its officers and directors) and Friedebach represented that USL would protect, defend, indemnify and save RA harmless from any future product liability claim. USL and Friedebach knew and/or should have known said statements were false. USL and Friedebach intended RA to rely upon these representations, which had been made with the intent to deceive RA.

7

34. RA reasonably relied upon the false representations in ultimately deciding to enter into the agreements, and has now been damaged as a direct and proximate result of the intentional misrepresentations in an amount in excess of $10,000.00, as well as punitive damages.

## VI. THIRD CLAIM
## UNFAIR AND DECEPTIVE TRADE PRACTICES

35. RA realleges the allegations contained in paragraphs 1 through 34 by reference as if fully set forth herein.

36. The actions of USL and Friedebach as more fully set forth herein were in and affecting commerce, and constitute an unfair and deceptive practice for which RA has suffered damages.

37. As a direct and proximate result of the actions of USL and Friedebach, RA has suffered damages in excess of $10,000.00 for which it seeks recovery, along with its attorneys' fees and trebling of any damage award.

## VII. FOURTH CLAIM
## MANDATORY INJUNCTION

38. RA realleges the allegations contained in paragraphs 1 through 37 by reference as if fully set forth herein.

39. As set forth above, to the extent the allegations in the Reotts' Lawsuit are found to be true, USL's tree stands do not meet ASTM standards. As such, upon information and belief, there are countless number of USL tree stands currently in the market which either have been or will be purchased by the public and which are currently in use or will be in use.

8

40. These tree stands pose a threat to the public at large in that they may cause injury to the user. In light of this danger, RA requests this Court enter a mandatory injunction requiring USL and, as set forth below, Randall to take all steps necessary to immediately remove USL's tree stands from the public; to recall all tree stands which have been made within the last six (6) years; and to bear all expenses associated with said recall.

41. Additionally, contrary to its obligations under the agreements, USL has not maintained liability insurance with RA as an additional insured.

42. USL voluntarily terminated the liability insurance despite its obligation to maintain it..

43. Upon information and belief, USL currently has limited resources such that it could not pay any claims due in the event a user of one of its tree stands suffered serious, personal injury. As such, RA respectfully requests this Court enter a mandatory injunction requiring USL and Randall to take all steps necessary to immediately obtain liability insurance similar to the terms set forth in the License Agreement.

## VIII. FIFTH CLAIM
## FRAUDULENT TRANSFER

44. RA realleges the allegations contained in paragraphs 1 through 43 by reference as if fully set forth herein.

45. At the time USL transferred the APA Proceeds to Randall, it did so, upon information and belief, with the intent to delay, hinder and/or defraud creditors of USL, including but not limited to RA.

46. At the time USL transferred the APA Proceeds to Randall, it did so without receiving reasonably equivalent value. The transfer left USL with assets that were unreasonably

9

WCSR 3507741v1

Case 1:06-cv-01109-WO-PTS   Document 4   Filed 12/29/06   Page 9 of 14

small in relation to its business. By receiving less than reasonably equivalent value in exchange for the transfer, USL knew and/or should have known that it would incur debts beyond its ability to pay when they became due.

47. At the time of the transfer, Randall was an insider to USL, as said term is defined in the North Carolina Uniform Fraudulent Transfer Act, N.C. Gen. Stat. §39-23 *et seq*. Moreover, neither the APA nor the transfer of the APA Proceeds was revealed to RA, despite obligations to do so under the agreements.

48. The transfer of the APA Proceeds constituted substantially all of USL's assets, whereupon USL was insolvent and could not meet its financial obligations, including its obligation to maintain liability insurance as required under the agreements.

49. As a direct and proximate result of the actions of USL and Randall, RA has been damaged in an amount in excess of $10,000.00. RA requests the Court enter an order: voiding the transfer of the APA Proceeds to Randall; requiring that said funds be returned to USL; and that an injunction be entered preventing Randall's further use of the APA Proceeds or disposition of any property, real or personal, which have been obtain from the APA Proceeds.

## IX. SIXTH CLAIM
## MERE INSTRUMENTALITY AND/OR ALTER EGO

50. RA realleges the allegations contained in paragraphs 1 through 49 by reference as if fully set forth herein.

51. Upon information and belief, at the time of and subsequent to the APA, Defendant USL was undercapitalized, existed as the alter ego of Randall and was a mere instrumentality of the same individual.

52. Upon information and belief, Randall exercised complete control and complete domination of the policy and business practices of USL such that USL had no separate mind, will or existence of its own, especially at the time of and subsequent to the APA.

53. Immediately following the APA, USL was underfunded, undercapitalized and lacked the necessary insurance to move forward as an operating entity. Upon information and belief, Randall maintained the structure of USL as a corporate entity following the APA to protect and shield himself from personal liability.

54. Based upon the above actions, RA respectfully requests this Court pierce the corporate veil of USL and hold Randall personally liable for any and all damages awarded RA in this matter, including but not limited to attorneys' fees.

## X. SEVENTH CLAIM FOR RELIEF: EQUITABLE ESTOPPEL

55. RA realleges the allegations contained in paragarphs 1 through 54 by reference as if fully set forth herein.

56. At the time USL (including its officers and directors) and Friedebach made the above-referenced promises of maintaining liability insurance and protecting, defending, indemnifying and saving RA harmless from all product liability claims, it concealed from RA that said representations were false, despite knowing of their falsehood.

57. At the time USL and Friedebach made the above-referenced promises, they intended for RA to rely upon said promises. RA relied upon these promises to its detriment.

58. At the time USL and Friedebach made such promises, RA lacked the knowledge that these promises were false, and further lacked the ability to know the truth of said statements.

59. Based upon the actions of USL and Friedebach, the defendants should be equitably estopped from asserting any affirmative defenses.

WHEREFORE, plaintiff prays the Court the following:

1. That it have and recover their damages in excess of $10,000 as well as punitive damages against USL and Friedebach, and that said amount be trebled pursuant to N.C. Gen. Stat. §75-1.1;

2. That it be awarded attorney's fees pursuant to G.S. § 75-16.1 and the Agreement;

3. For a mandatory injunction requiring USL and Randall to recall and remove all of USL's tree stands from any retail outlet at its own cost and/or to immediately obtain liability insurance in an amount comparable to the policy maintained as of the date of the License Agreement ;

4. That the transfer of the APA Proceeds from USL to Randall be voided;

5. That USL's corporate veil be pierced, and Randall be held personally liable for any damages RA may obtain as against USL;

6. For a trial by jury on all issues;

7 For such other and further relief as the Court may determine appropriate.

8. That the defendants be equitably estopped from asserting their affirmative defenses;

12

WCSR 3507741v1

Case 1:06-cv-01109-WO-PTS   Document 4   Filed 12/29/06   Page 12 of 14

This the 27 day of December, 2006.

*[signature]*
Philip J. Mohr
North Carolina State Bar Number: 24227
WOMBLE CARLYLE SANDRIDGE & RICE
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone (336) 721-3577
Facsimile (336) 733-8358
*Attorney for Plaintiff*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for plaintiff RA Brands, LLC, and is a person of such age and discretion as to be competent to serve process.

That on December 27, 2006, he served a copy of the Amended Complaint by placing said copy in a first class postpaid envelope and addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and its contents in the United States Mail at Winston-Salem, North Carolina.

ADDRESSEE(S):

Gary Beaver
Nexsen Pruet Adams Kleemeier
Suite 100
701 Green Valley Road
Greensboro, NC 27408

_____
Philip J. Mohr
North Carolina State Bar Number: 24227
Attorney for Plaintiff
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone (336) 721-3577

14